The document below is hereby signed.

Signed: August 7, 2014



_____
S. Martin Teel, Jr.
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| STEPHEN THOMAS YELVERTON, | ) | Case No. 09-00414 |
| | ) | (Chapter 7) |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| UNITED STATES EX REL. | ) | |
| STEPHEN THOMAS YELVERTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Adversary Proceeding No. |
| v. | ) | 14-10014 |
| | ) | |
| WENDELL W. WEBSTER, *et al.*, | ) | Not for publication in |
| | ) | West's Bankruptcy Reporter. |
| Defendants. | ) | |

MEMORANDUM DECISION REPORTING BANKRUPTCY COURT'S
RECOMMENDATION REGARDING THE MOTION TO WITHDRAW THE REFERENCE

Pursuant to the district court's request, this memorandum decision sets forth my recommendation regarding whether the district court should grant the plaintiff's motion to withdraw the reference. I recommend that Yelverton's motion to withdraw the reference be denied for the reasons that follow.

I

This adversary proceeding is brought in a case under chapter 7 of the Bankruptcy Code (11 U.S.C.) in which Stephen Thomas Yelverton is the debtor, and Wendell W. Webster is the chapter 7 trustee.  Yelverton seeks in this adversary proceeding to recover on Webster's bond.  Yelverton's amended complaint also named Webster and Jeffrey L. Tarkenton (the attorney for Yelverton's sisters against whom the estate had claims) as defendants, but he has dismissed them as parties, leaving the alleged bond company, MRSC Insurance Partners, as the sole defendant.[1]

Under 11 U.S.C. § 322(a), Webster was required to file "a bond in favor of the United States conditioned on the faithful performance of [his] official duties."  Under Fed. R. Bankr. P. 2010(a), the United States Trustee is authorized to post a blanket bond for chapter 7 trustees.  Under Fed. R. Bankr. P. 2010(b), "[a] proceeding on the trustee's bond may be brought by any party in interest in the name of the United States for the use of the entity injured by the breach of the condition,"[2] and

---

[1] That defendant contends that it is not a proper defendant because the bond company is Federal Insurance Company.  See Dkt. No. 26.

[2] Yelverton has brought this adversary proceeding as "United States ex rel. Stephen Thomas Yelverton" (the term "ex rel." meaning "by or on the relation of") although he could have avoided the use of Latin and sued merely as "United States by Stephen Thomas Yelverton."  *See, e.g.*, *Liberty Mut. Ins. Co. v. United States of America by Lamesa Nat'l Bank (In re Schooler)*, 725 F.3d 498 (5th Cir. 2013).

31 U.S.C. § 9307(a)(1) and Fed. R. Bankr. P. 9025 authorized the proceeding on the bond to be brought in the bankruptcy court.

The amended complaint contends that Webster breached his performance of his fiduciary duties by entering into a settlement agreement with Tarkenton's clients.[3] Yelverton filed a motion to withdraw the reference as to this adversary proceeding on July 2, 2014.

II

The adversary proceeding is a proceeding that has been referred to the bankruptcy court to address pursuant to 28 U.S.C. § 157(a) and District Court Local Bankruptcy Rule 5011-1. The bankruptcy court is statutorily authorized to hear and decide core proceedings referred to it, and to hear and issue proposed findings of fact and conclusions of law in non-core proceedings referred to it. 28 U.S.C. §§ 157(b)(1) and 157(c)(1).[4] A party, however, may move for withdrawal of the reference, either

---

[3] The settlement was approved by the bankruptcy court two years ago. After an evidentiary hearing, the bankruptcy court approved that settlement by an order of June 19, 2012, in Yelverton's bankruptcy case. The district court (the Honorable Christopher R. Cooper presiding) affirmed that order and related orders on August 6, 2014, in Civil Action Nos. 12-01539, 13-00454, and 13-01544.

[4] When a matter that is statutorily classified as a core proceeding but the bankruptcy court is barred by Article III of the Constitution from deciding the proceeding, the bankruptcy court is authorized to treat the matter as a non-core proceeding. *Executive Benefits Ins. Agency v. Arkison*, --- U.S. ---, 134 S.Ct. 2165, --- L.Ed.2d --- (2014).

3

mandatory or permissive, under 28 U.S.C. § 157(d). The burden of proving that withdrawal is warranted rests on the movant. *In re Vicars Ins. Agency. Inc.*, 96 F.3d 949, 953 (7th Cir. 1996).

A.

**Mandatory withdrawal** is required under § 157(d) only if resolution of the proceeding will require "consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce." The statute must be given a narrow interpretation. *In re Vicars Ins. Agency. Inc.*, 96 F.3d at 952 ("courts have uniformly agreed that a narrow interpretation is indeed required"). Mandatory withdrawal of the reference is required only where "substantial and material" consideration of non-bankruptcy laws of the United States regulating organizations or activities affecting interstate commerce is required. *Id.* at 952-54; *City of New York v. Exxon Corp.*, 932 F.2d 1020, 1026 (2nd Cir. 1991).[5] Mandatory withdrawal is not required here because the resolution of this

---

[5] As explained in *In re Vicars Ins. Agency, Inc.*, 96 F.3d at 953:

> We therefore hold that as far as non-title 11 issues are presented, mandatory withdrawal is required only when those issues require the interpretation, as opposed to mere application, of the non-title 11 statute, or when the court must undertake analysis of significant open and unresolved issues regarding the non-title 11 law. The legal questions involved need not be of "cosmic proportions," *In re Rimsat, Ltd.*, 196 B.R. 791, 799 (N.D. Ind. 1995), but must involve more than mere application of existing law to new facts.

4

adversary proceeding will not require substantial and material consideration of "other laws of the United States regulating organizations or activities affecting interstate commerce."

Yelverton has dismissed the complaint as to all parties other than Webster's alleged surety, and accordingly only the claim against the surety remains. The claim against the surety arises under 11 U.S.C. § 322. *See In re Schooler*, 725 F.3d at 507. Although another federal statute, 31 U.S.C. § 9307(a)(1), generally authorizes claims to be brought against a surety of a federal bond, that statute is merely a jurisdictional statute and does not fix the rights and obligations arising from the bond as at issue here. Accordingly, it is not a non-title 11 law regulating activities affecting interstate commerce because it does not immediately and directly affect interstate commerce. *See Coe-Truman Technologies, Inc. v. United States (In re Coe-Truman Technologies, Inc.)*, 214 B.R. 183, 186-87 (N.D. Ill. 1997) (the Tucker Act, a non-title 11 statute, authorized the adversary proceeding, but that did not require withdrawal of the reference: the Tucker Act does not regulate organizations or activities affecting interstate commerce); *Underwood v. Russian Space Agency (In re Rimsat)*, 196 B.R. 791, (N.D. Ind. 1995) (mandatory withdrawal not required when an issue arises under title 28 relating to the bankruptcy court's jurisdiction: such laws do not have a direct impact on interstate commerce).

Similarly, other provisions in 31 U.S.C. §§ 9301 to 9309 govern such issues as who may be a surety.  Consideration of those provisions will not be necessary for the resolution of this adversary proceeding: the issue is simply whether Webster faithfully performed his duties.  Mandatory abstention is not warranted when non-title 11 laws are only incidentally involved in the proceeding, but is required only where there must be a "substantial and material" consideration, not mere application, of non-title 11 laws.  *In re Vicars Ins. Agency. Inc.*, 96 F.3d at 953-54; *City of New York v. Exxon Corp.*, 932 F.2d at 1026. The provisions of 31 U.S.C. §§ 9301 to 9309 are merely background to this proceeding, and Yelverton points to no substantial and material consideration of those provisions, versus their mere application, that will be necessary to dispose of this adversary proceeding.  In any event, Yelverton has not articulated how those provisions are laws "regulating organizations or activities affecting interstate commerce" and has not carried his burden in that regard.

Yelverton attempts to obtain a mandatory withdrawal by characterizing his claims as federal common law claims for breach of fiduciary duties.  However, the claims against the surety rest on 11 U.S.C. § 322, not a nonbankruptcy law, and the issue of whether Webster faithfully performed his duties (the condition of the bond) would turn on his duties under title 11.

6

Even if the law regarding direct claims against Webster for breaches of his fiduciary duties is pertinent to proceedings on Webster's bond, the analysis does not change.  If Webster were still a party, 11 U.S.C. § 323 would be the statutory authority for suing him, and title 11 would be the source of Webster's duties.  The governing law for a claim of breach of fiduciary duty is *Mosser v. Darrow*, 341 U.S. 267, 71 S.Ct. 680, 95 L.Ed. 927 (1951), and its progeny.  *See Lopez-Stubbe v. Rodriguez-Estrada (In re San Juan Hotel Corp.)*, 847 F.2d 931, 936-37 (1st Cir. 1988).  Those decisions are case law, and not written in a statute.  Nevertheless, a trustee's fiduciary duties turn on her duties under title 11, and such decisions merely interpret when those title 11 duties are violated, and supply remedies to enforce the creditors' and the debtor's rights regarding the trustee's dereliction in performing those duties under title 11.  Such claims are quintessentially claims under title 11, not under nonbankruptcy law.  What is considered in addressing such claims is title 11 law, not other federal laws.

Moreover, even if one applies a literal view of § 157(d), inconsistent with giving the statute a narrow interpretation, and treats *Mosser v. Darrow* and its progeny as non-statutory law (federal common law) and not title 11 law (because such case law is not written in title 11), that does not require mandatory withdrawal.  Such federal common law should not be considered to

be among the federal laws "pertaining to regulating organizations or activities affecting interstate commerce" within the meaning of § 157(d).  The courts are not in the business of adopting laws to regulate organizations or activities affecting interstate commerce; that is the job of Congress.  The reference in § 157(d) to "other laws of the United States" than title 11 can be read in the context of the reference to title 11 as meaning laws of the same ilk, namely, statutory law.  Congressional enactments can constitute "laws of the United States regulating organizations or activities affecting interstate commerce" but Congress did not intend the federal common law to be viewed as among the laws regulating such activities.  As stated in *PBGC v. Continental Airlines (In re Continental Airlines)*, 138 B.R. 442, 445 (D. Del. 1992):

> The interpretation of contracts involving the United States or one of its agencies is generally governed by federal common law. *Boyle v. United Technologies Corp.*, 487 U.S. 500, 504, 108 S.Ct. 2510, 2514, 101 L.Ed.2d 442 (1988).  Nevertheless, the mere presence of a contract claim involving a federal agency is not sufficient to deprive the Bankruptcy Court of jurisdiction.  This Court follows the interpretation of Section 157(d) that does not include federal common law within the phrase "laws of the United States," i.e. "federal laws."  *See In re Continental Airlines, Inc.*, 60 B.R. 459, 465 (Bankr. S.D. Tex. 1985).  This interpretation construes the statute narrowly in keeping with its legislative history.  *See In re White Motor Corp.*, 42 B.R. 693, 700 (N.D.Ohio 1984).  Furthermore, since the interpretation of federal contracts follows traditional contract principles, *United States v. Seckinger*, 397 U.S. 203, 210, 90 S.Ct. 880, 884, 25 L.Ed.2d 224 (1970), it is consistent with the purpose of the statute.  The Bankruptcy Court would not infringe on federal principles foreign to the Bankruptcy

> Code by interpreting or enforcing the Settlement Agreement. *See In re Haddad*, 68 B.R. 944, 953 (Bankr. D. Mass. 1987) ("Bankruptcy courts have inherent power to enforce settlement agreements between parties.") Other courts have also interpreted the statute in this way, either explicitly or implicitly. *See, e.g., In re Continental Airlines*, 60 B.R. 459, 465 (Bankr. S.D. Tex. 1985) ( "The Court here interprets the phrase 'federal laws' to mean 'federal statutes.'"); *In re Continental Airlines, Inc.*, 57 B.R. 845, 850 (Bankr. S.D. Tex. 1985) ("[F]ederal common law grounded in labor policy" does not justify withdrawal.); *In re White Motor Corp.*, 42 B.R. 693, 705–06 (N.D. Ohio 1984) (refusing to withdraw the reference for PBGC's contractual claim).

Specifically, as relates to this case, the federal courts' establishment via case law of a claim for breach of fiduciary duties was not undertaken to regulate activities affecting interstate commerce. Instead, such a claim is directed to remedying breaches of a trustee's fiduciary duties in administering a case under title 11 regardless of whether the trustee's activities affected interstate commerce. Such case law rules are not aimed at regulating activities that "immediately and directly" impact interstate commerce, and thus are not laws regulating activities relating to interstate commerce. *In re Rimsat*, 196 B.R. at 187.[6]

The proposition that Congress did not intend to treat the federal common law as regulatory law is a common-sense extension

---

[6] This is not a case like *Homeland Stores, Inc. v. Burris (In re Homeland Stores, Inc.)*, 204 B.R. 427, 430 (D. Del. 1997), in which the extent to which federal common law claims existed depended on consideration of a nonbankruptcy statute, in that case, ERISA.

9

of the majority view that § 157(d) is to be given a narrow interpretation. *See, e.g.*, *Shugrue v. Airline Pilots Ass'n Int'l (In re Ionosphere Clubs, Inc.)*, 922 F.2d 984, 995 (2d Cir. 1990) (mandatory withdrawal "is reserved for cases where substantial and material consideration of non-Bankruptcy Code federal **statutes** is necessary for the resolution of the proceeding") (emphasis added); *In re Vicars Ins. Agency. Inc.*, 96 F.3d at 953; *City of New York v. Exxon Corp.*, 932 F.2d at 1026.

One court has taken a contrary view. In *Securities Investor Protection Corp. v. Bernard L. Madoff Inv. Secs. LLC*, 2013 WL 4077586 (S.D.N.Y. Aug. 2, 2013), the court opined:

> [A]lthough the Trustee argues that the Court's withdrawal authority is limited to non-bankruptcy federal statutes and does not extend to non-bankruptcy federal common law issues like the *China Trade* test, the Court has implicitly rejected this argument on numerous occasions. *See, e.g., Picard v. HSBC Bank PLC*, 450 B.R. 406, 410–11 (S.D.N.Y. 2011) (withdrawing the reference to consider whether the defense of *in pari delicto* deprived the Trustee of prudential standing because such standing determinations are "a matter of federal law"); *Picard v. Flinn Investments, LLC*, 463 B.R. 280, 286–88 (S.D.N.Y. 2011) (withdrawing the reference to consider issues raised under *Stern v. Marshall*, 131 S.Ct. 63 (2010), because "[r]esolution of this argument requires 'significant interpretation' of both Article III and the Supreme Court precedent analyzing it").

However, that view must be rejected as inconsistent with the majority view that § 157(d) must be interpreted narrowly; with the view that a natural reading of "other laws" in § 157(d) means laws of the same ilk as title 11, namely, statutory laws; and with a common sense view that federal common law rules governing

10

claims for breaches of fiduciary duty are not laws regulating activities affecting interstate commerce.

                                    B.

As to **discretionary withdrawal** of the reference under § 157(d), that has rarely if ever occurred in this district when there are issues that the bankruptcy court could handle if the proceeding is not withdrawn.  Regardless of whether this is a core proceeding as a proceeding arising in the bankruptcy case or is a non-core proceeding, and regardless of whether the plaintiff is entitled to a jury trial or not, the bankruptcy court would be authorized (unless and until the reference is withdrawn) to hear this proceeding at the very least up until the point that it is ready for a final pretrial conference to set a trial date.

Moreover, the bankruptcy court has presided over the bankruptcy case in which Webster is alleged to have failed faithfully to perform his duties, and has intimate knowledge regarding the events at issue.  One of the defenses likely to be adjudicated is that the proceeding is barred by res judicata as Webster's settlement with Yelverton's siblings was approved by an order of the bankruptcy court.  That issue and any summary judgment motions are matters that it makes sense to let the bankruptcy court address in the first instance.

In any event, Yelverton may be in error in contending that this is a non-core proceeding and that he is entitled to a jury

11

trial, and thereby asserting that withdrawal is warranted.

Substantial case law treats a proceeding like this one as a core proceeding. *See Schultze v. Chandler*, --- F.3d ----, 2014 WL 3766719 (9th Cir. 2014); *Walsh v. Northwestern Nat'l Ins. Co. (In re Ferrante)*, 51 F.3d 1473, 1476 (9th Cir. 1995) (post-petition breach of fiduciary claim against a trustee was a core proceeding); *Maitland v. Mitchell (In re Harris Pine Mills)*, 44 F.3d 1431, 1435 (9th Cir.1995) (a postpetition state-law claim against a bankruptcy trustee arising out of the sale of estate property was a core proceeding); *Capitol Hill Group v. Pillsbury, Winthrop, Shaw, Pittman, LLC*, 569 F.3d 485, 489 (D.C. Cir. 2009) ("In sum, we agree with our sister circuits that malpractice claims against court-appointed professionals stemming from services provided in the bankruptcy proceeding are inseparable from the bankruptcy context and constitute a proceeding 'arising in' the bankruptcy.").

Furthermore, it is not at all clear that Yelverton has a right to a jury trial. *See Tanguy v. West (In re Davis)*, 2012 WL 2871662, at *3 (S.D. Tex. July 10, 2012), aff'd, 538 Fed. Appx. 440 (5th Cir. 2013), cert. denied, --- U.S. ----, 134 S.Ct. 1002, 187 L.Ed.2d 851 (2014), noting case law cited by a party:

> holding that when a trustee breaches his fiduciary duty, it falls to the equitable power of courts to enforce his fiduciary duties. *In re Sunshine Trading & Transp. Co.*, 193 B.R. 752, 757 (Bkrtcy. E.D. Va. 1995), citing *Yadkin Valley Bank & Trust Co. v. McGee (In re Hutchinson)*, 5 F.3d 750, 757 (4th Cir. 1993); *Hallock v. Key Federal*

>    *Savings Bank (In re Silver Oak Homes, Ltd.)*, 167 B.R. 389 (Bkrtcy. D. Md. 1994); *Fairway Investments Trust, Ltd. v. Wright (In re American Solar King)*, 142 B.R. 772, 776 (Bkrtcy. W.D. Tex. 1992) (action against a trustee for misconduct in administering the estate is equitable and thus plaintiffs had no right to a jury trial); *Baskin v. Wade (In re Brenner)*, 119 B.R. 495 (E.D. Pa. 1990) (suit against a trustee is a public action because it involves the administration of the bankruptcy case; duty of administering a bankruptcy case was congressionally-created and therefore "public" and falls within the summary jurisdiction of the bankruptcy court and not [sic] jury trial is available); *Grassmueck v. Foster (In re E Z Feed Cube Co.)*, 115 B.R. 684, 689 (Bkrtcy. D. Ore. 1990) (action against trustee is equitable in nature because he may be surcharged for wrongful conduct or negligence; plaintiff not entitled to jury trial). *See also In re Carter Paper Co.*, 220 B.R. 276, (Bkrtcy. M.D. La. 1998) ("the vast majority of courts to rule on the issue has held that breach of fiduciary duty actions are equitable actions.") (and cases cited therein).

It makes sense to let the bankruptcy court in the first instance address those issues.[7]

### III

For all of these reasons, I recommend that the motion to withdraw the reference be denied.

[Signed and dated above.]

Copies to: All counsel of record.

---

[7] If the bankruptcy court rules that the proceeding is a core proceeding, Yelverton can seek review of that ruling via an interlocutory appeal (requiring leave of the district court) or via appeal of right from a final judgment. If the bankruptcy court rules that there is no right to a jury trial, Yelverton can seek review of that ruling via an interlocutory appeal (requiring leave of the district court) or via an appeal of right from a final judgment (or via objections to proposed findings of fact and conclusions of law if the matter is a non-core proceeding).