The document below is hereby signed.

Signed: September 23, 2014



_S. Martin Teel, Jr._
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| STEPHEN THOMAS YELVERTON, | ) | Case No. 09-00414 |
| | ) | (Chapter 7) |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| UNITED STATES EX REL. | ) | |
| STEPHEN THOMAS YELVERTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary Proceeding No. |
| | ) | 14-10014 |
| WENDELL W. WEBSTER, _et al._, | ) | |
| | ) | Not for publication in |
| Defendants. | ) | West's Bankruptcy Reporter. |

MEMORANDUM DECISION AND ORDER
DENYING _MOTION FOR RECONSIDERATION_
_OF INTERLOCUTORY ORDER GRANTING MOTION TO INTERVENE_

The plaintiff Yelverton has moved for reconsideration of the order granting Wendell W. Webster permission to intervene. I will deny that motion.

Yelverton sued both Webster (the trustee in Yelverton's bankruptcy case) and his alleged surety alleging that Webster

breached his fiduciary duty. When the alleged surety failed to answer, Yelverton dismissed Webster as a party, and sought to obtain a default judgment against the alleged surety. It turned out that Yelverton had sued the wrong surety. Yelverton has amended the complaint to sue the correct surety. In the meantime, Webster successfully moved to intervene.

Citing *Deutsche Bank Nat'l Trust Co. v. FDIC*, 717 F.3d 189, 193, 195-196 (D.C. Cir. 2013), Yelverton contends that to be entitled to intervene, Webster must demonstrate injury-in-fact such as to have Article III standing to be a party in the adversary proceeding. Webster has constitutional standing to intervene for at least three reasons.

First, although Yelverton dismissed Webster as a party, that dismissal was without prejudice, and Yelverton could sue Webster again. There was Article III standing for Yelverton to sue Webster for breach of fiduciary duty as the breach of fiduciary duty (if such a breach actually existed) allegedly resulted in injury-in-fact suffered by Yelverton, was caused by Webster's actions, and is redressable through an award of monetary damages. *Deutsche Bank Nat'l Trust Co.*, 717 F.3d at 193 ("It is axiomatic that Article III requires a showing of injury-in-fact, causation, and redressability."). Yelverton's claim is not premised on alleged misconduct of the surety, but instead on alleged misconduct of Webster, for which the surety is but a secondary obligor. Because Yelverton could sue Webster and hold him

directly liable for such misconduct, Webster has a stake in demonstrating that he did not engage in misconduct and cannot be held liable.  The court permitted Webster to intervene as a defendant regarding the claims that he breached his fiduciary duty; that will permit him in a procedurally simple fashion to obtain an adjudication whether the claim asserted against him has any merit.  Effectively, Webster was permitted to intervene to obtain a declaratory judgment that he did not breach his fiduciary duty.  That the roles are reversed (Webster's intervening to obtain an adjudication that he did not breach his fiduciary duties instead of Yelverton's having continued to press the claim that Webster breached his fiduciary duties) is immaterial to Article III standing analysis.  *See Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 85 L.Ed. 826 (1941) ("It is immaterial that . . ., in the declaratory judgment suit, the positions of the parties in the conventional suit are reversed; the inquiry is the same in either case.").  Because there would have been Article III standing for Yelverton to pursue his claims against Webster for breach of fiduciary duty, it follows that Webster has Article III standing to intervene to obtain an adjudication that those claims lack validity.  *See Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-41, 57 S.Ct. 461, 81 L.Ed. 617 (1937) (requiring that the dispute be "definite and concrete, touching the legal relations of parties having adverse legal interests," and that it be "real and

substantial" and "admi[t] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts"). *See also Maryland Cas. Co.*, 312 U.S. at 273 ("Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.") Plainly, there is a substantial controversy between Webster and Yelverton, their legal interests are adverse, and Yelverton's having asserted the claim against Webster demonstrates that the controversy is of sufficient immediacy and reality to confer on Webster Article III standing to obtain an adjudication that he did not breach his fiduciary duty.

Second, the claim that Webster breached his fiduciary duty remains pending as to Webster's surety, and Webster faces the prospect of the surety suing him for indemnification in the event that Webster is found to have breached his fiduciary duty.[1] Yelverton points out that no claim for indemnification has yet been asserted, but that is immaterial. The claim for

---

[1] *See* 23 Williston on Contracts § 61:59 (Richard A. Lord 4th ed. 2008) ("[E]ven in the absence of any express contract of indemnity, the principal obligor is impliedly bound to indemnify the surety and make it whole."); *Green Leaves Rest., Inc. v. 617 H Street Assocs.*, 974 A.2d 222, 237 n.36 (D.C. 2009) (same) (citing Restatement (Third) of Suretyship and Guarantee § 22 cmt. a). Yelverton, who sued on the bond, does not contend that its terms negated that implied right of the surety to indemnification from Webster.

indemnification is in existence, albeit only a contingent claim dependent on Yelverton prevailing against the surety, and Webster has a direct stake in fending off any claim for indemnification by intervening and demonstrating that there was no misconduct on his part.

Third, because a ruling against the surety that Webster breached his fiduciary duty could have an adverse impact on Webster's professional reputation as a chapter 7 trustee (an appointment that is subject to review and possible termination by the United States Trustee under 28 U.S.C. § 586(a)(1) and (d)) that too forms a basis for treating him as having standing to intervene even if he faced no claim against himself. *See Adams v. Ford Motor Co.*, 653 F.3d 299, 304-306 (3d Cir. 2011) (attorney had standing to intervene regarding a ruling that amounted to a public reprimand of his professional conduct as an attorney).

For the foregoing reasons, Webster's seeking an adjudication that he did not breach his fiduciary duty presents a "case or controversy" as required by Article III of the Constitution, and Webster has obvious standing under Article III to obtain such an

adjudication.[2]  In addition, subject matter jurisdiction plainly exists under 28 U.S.C. § 1334(b) to permit him to seek that adjudication.  He could sue in a separate adversary proceeding for such an adjudication, and it made sense to let him obtain that adjudication via intervention in the same proceeding in which his surety is sued.  Upon Webster's obtaining a dismissal of Yelverton's claim of breach of fiduciary duty, the adversary proceeding would be dismissed as to both him and the surety.  *See United States v. State Farm Fire & Cas. Co. (In re Joplin)*, 882 F.2d 1507, 1511 (10th Cir. 1989) (bankruptcy court granted a trustee's motion to intervene in proceeding against the trustee's surety, granted the trustee's motion for summary judgment, and dismissed the proceeding as to both the trustee and the surety).  Granting him permissive intervention as a defendant to demonstrate that there was no breach of fiduciary duty was

---

[2]  Yelverton's claim that Webster breached his fiduciary duty is an indirect attack upon this court's order approving a settlement that Webster negotiated with Yelverton's sisters, an order that Webster succeeded in having the District Court affirm when Yelverton took an appeal.  Yelverton may decide to appeal the district court's affirmance, or may attempt to obtain a vacating of the settlement order.  Webster has an interest in obtaining a ruling in *this* proceeding that he did not breach his fiduciary duty, as he can hold up such a ruling as precluding any attacks (predicated on Yelverton's claims of breach of fiduciary duty) on the order approving the settlement.  Whether that constitutes a sufficient basis to confer standing, I need not decide.  *See American Games, Inc. v. Trade Prods., Inc.*, 142 F.3d 1164, 1167 (9th Cir. 1998) ("American Games stands to benefit directly from the preclusive effect of the district court's decision on those issues if that court's vacatur decision is reversed.").  *But see Korczak v. Sedeman*, 427 F.3d 419 (7th Cir. 2005) (questioning *American Games*).

entirely appropriate. It is thus

ORDERED that the *Motion for Reconsideration of Interlocutory Order Granting Motion to Intervene* (Dkt. No. 75) is DENIED.

[Signed and dated above.]

Copies to: All counsel of record.